UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
GINA R. GAGLIARDI,

                              Plaintiff(s),

                                                          Case No.: 26-cv-02961

          -against-

PORT JEFF CHRYSLER JEEP INC.,

          Defendant(s).
---------------------------------------------------------------------X

STATE OF NEW YORK)
                 ) ss.:
COUNTY OF Suffolk)

          Gina R. Gagliardi, being duly sworn, deposes and says the following under penalties of perjury:

1.    I am the Plaintiff in this action.  This affidavit is made based on my personal knowledge except for those matters alleged on information and belief.

2.    I was interested in buying a new Jeep Grand Cherokee and went to Port Jeff Chrysler Jeep Inc. to inquire about a jeep.

3.    The sales person at Defendant's place of business showed me a new Jeep Grand Cherokee.

4.    I liked the car.

5.    Rather than selling me the new vehicle in the show room, Defendant arranged the transaction for a different new vehicle, stating that the showroom vehicle had been sold while I went for a test drive.

6.    After keeping me at the dealership for more than five hours and until closing, I left to get my passport because I had a Florida drivers license and the dealership wanted another form of ID. It was at that point that I saw that I was purchasing a demonstrator.

7. I informed the dealership that I did not want the vehicle and that they would be hearing from my lawyer. The representative at the dealer refused to talk about the issue, insisting that I had gotten a great deal.

8. I understood from the window sticker on the vehicle that I purchased (the "Vehicle") that the price was $48,375. A copy of the window sticker is attached as Exhibit "A".

9. But when I looked at the paperwork I had been provided, the price of the vehicle had jumped to $63,099.55. A copy of the RISC is attached as Exhibit "B".

10. Not only did the RISC indicate a significantly higher price for the Vehicle, it also showed that this was not a new car, but was in fact a "demo", or demonstrator.

11. Additionally, the Bill of Sale and Retail Certificate of Sale (MV-50), attached as Exhibits "C" and "D", respectively show that this was a "new" vehicle even though it had already been driven for at least 2442 miles according to Exhibit, "D".

12. I returned to the dealership and asked them to take the Vehicle back, but they refused.

13. Had I know that this was not, in fact, a new vehicle, I would not have purchased it.

Gina R. Gagliardi

Sworn to me this
16 day of July, 2026

NOTARY PUBLIC

Jackson Pace
Notary Public, State of New York
No. 01PA0035167, Suffolk County
Commission Expires Mar. 21, 2029

Exhibit "A"

Case 2:25-cv-02961-KAM-ARL   Document 14-2   Filed 07/10/25   Page 4 of 15 PageID #: 39

## 2025 MODEL YEAR

# Jeep. GRAND CHEROKEE ALTITUDE X 4X4

For more information visit: www.jeep.com
or call 1-877-IAM-JEEP

FCA US LLC

THIS VEHICLE IS MANUFACTURED TO MEET SPECIFIC UNITED STATES REQUIREMENTS. THIS
VEHICLE IS NOT MANUFACTURED FOR SALE OR REGISTRATION OUTSIDE OF THE UNITED STATES.

**MANUFACTURER'S SUGGESTED RETAIL PRICE OF
THIS MODEL INCLUDING DEALER PREPARATION**

| Base Price: | $39,035 |
|---|---|

**JEEP GRAND CHEROKEE LAREDO 4X4**
Exterior Color: Silver Zynith Exterior Paint
Interior Color: Global Black Interior Color
Interior: Capri Leatherette / Suede Seats
Engine: 3.6L V6 24V VVT Pentastar® Engine with Stop / Start
Transmission: 8-Speed Automatic 850RE Transmission
**STANDARD EQUIPMENT** (UNLESS REPLACED BY OPTIONAL EQUIPMENT)
**FUNCTIONAL/SAFETY FEATURES**
Advanced Multistage Front Air Bags
Supplemental Side-Curtain Front and Rear Air Bags
Supplemental Front Seat-Mounted Side Air Bags
Driver Inflatable Knee-Bolster Air Bag
Passenger Inflatable Knee-Bolster Air Bag
Quadra-Trac I® 4WD System
Adaptive Cruise Control with Stop and Go
Active Lane-Management System
Full-Speed Forward-Collision Warning Plus
ParkView® Rear Back-Up Camera
ParkSense® Rear Park-Assist with Stop
Blind-Spot and Cross-Path Detection
Advanced Brake-Assist
Rear-View Day / Night Mirror
Anti-Lock 4-Wheel Disc Brakes
Electronic Stability Control
Hill-Start Assist
Tire Pressure Monitoring Display
Compact Spare Tire
Conventional Differential Front Axle w/ Disconnect
Speed-Sensitive Power Locks
Security Alarm
Rear-Seat Object Alert
**INTERIOR FEATURES**
Uconnect® 5 with 8.4-Inch Touch Screen Display
Cluster with 10.25-Inch TFT Color Display
Apple CarPlay®
Google Android Auto™
Jeep Connect (Connected Services) w/ Trial
Integrated Voice Command
6 Speakers
Illuminated Cupholders
Deep-Tint Privacy Glass
12-Volt Auxiliary Power Outlet
Steering-Wheel-Mounted Audio Controls
8-Way Power Adjustable Driver Seat
4-Way Manual Adjustable Front Passenger Seat
A/C with Dual-Zone Auto Temperature Control
Full-Function Media Hub with 2-USB Plus Aux Port

2nd Row Dual Charge-Only USB Ports
Rear 60 / 40 Folding Seat
**EXTERIOR FEATURES**
P245/70R17 BSW All-Season Tires
LED Reflector Headlamps

| **OPTIONAL EQUIPMENT** (May Replace Standard Equipment) | |
|---|---|
| Silver Zynith Exterior Paint | $595 |
| Customer Preferred Package 22BB | $6,105 |
|   Altitude X | |
|   Capri Leatherette / Suede Seats | |
|   Rain-Sensitive Windshield Wipers | |
|   Remote-Start System | |
|   Selectable Tire-Fill Alert | |
|   Heated Steering Wheel | |
|   Heated Front Seats | |
|   Black Headliner | |
|   Power Sunroof | |
|   115-Volt Auxiliary Power-Outlet | |
|   Power Liftgate | |
|   Gloss-Black Exterior Accents | |
|   Wireless Charging-Pad | |
| 20-inch x 8.5-Inch Gloss-Black Painted Alum Wheels | $1,645 |
| 265/50R20 BSW All-Season LRR Tires | |
| | |
| Destination Charge | $1,995 |

| TOTAL PRICE: * | $48,375 |
|---|---|

**WARRANTY COVERAGE**
5-year or 60,000-mile Powertrain Limited Warranty.
3-year or 36,000-mile Basic Limited Warranty.
Ask Dealer for a copy of the limited warranties or
see your owner's manual for details.

## 5 YEAR / 60,000 MILE
**POWERTRAIN WARRANTY**

Assembly Point/Port of Entry: DETROIT, MICHIGAN, U.S.A.
VIN: 1C4RJHAG7SC-326314        LA-VOR 7598

E.L.        SHIP TO:        SOLD TO:

THIS LABEL IS ADDED TO THIS VEHICLE TO COMPLY WITH FEDERAL LAW. THE LABEL CANNOT BE REMOVED
OR ALTERED PRIOR TO DELIVERY TO THE ULTIMATE PURCHASER.

* STATE AND/OR LOCAL TAXES IF ANY, LICENSE AND TITLE FEES AND DEALER SUPPLIED AND
INSTALLED OPTIONS AND ACCESSORIES ARE NOT INCLUDED IN THIS PRICE. DISCOUNT, IF ANY,
IS BASED ON PRICE OF OPTIONS IF PURCHASED SEPARATELY.

---

## Fuel Economy and Environment

**EPA DOT**

Gasoline Vehicle

**Fuel Economy** These estimates reflect new EPA methods beginning with 2017 models.

## 22 MPG
combined city/hwy

19 city      26 highway

Standard SUV 4WD range from 11 to 100 MPGe.
The best vehicle rates 140 MPGe.

**You spend $2,500** in fuel costs over 5 years compared to the average new vehicle.

**4.5** gallons per 100 miles

**Annual fuel cost $2,400**

**Fuel Economy & Greenhouse Gas Rating** (tailpipe only)
1 ———— 5 ———— 10 Best

**Smog Rating** (tailpipe only)
1 ———— 6 ———— 10 Best

This vehicle emits 413 grams CO2 per mile. The best emits 0 grams per mile (tailpipe only). Producing
and distributing fuel also creates emissions. Learn more at fueleconomy.gov.

Actual results will vary for many reasons, including driving conditions and how you drive and maintain your
vehicle. The average new vehicle gets 26 MPG and costs $9,000 to fuel over 5 years. Cost estimates are
based on 15,000 miles per year at $3.50 per gallon. MPGe is miles per gasoline gallon equivalent. Vehicle
emissions are a significant cause of climate change and smog.

**fueleconomy.gov**
Calculate personalized estimates and compare vehicles.

Smartphone QR Code™

---

## GOVERNMENT 5-STAR SAFETY RATINGS

**Overall Vehicle Score** ★★★★★
Based on the combined ratings of frontal, side and rollover.
Should ONLY be compared to other vehicles of similar size and weight.

| Frontal Crash | Driver | ★★★★★ |
|---|---|---|
| | Passenger | ★★★★★ |

Based on the risk of injury in a frontal impact.
Should ONLY be compared to other vehicles of similar size and weight.

| Side Crash | Front seat | ★★★★★ |
|---|---|---|
| | Rear seat | ★★★★★ |

Based on the risk of injury in a side impact.

| Rollover | | ★★★★ |
|---|---|---|

Based on the risk of rollover in a single-vehicle crash.

Star ratings range from 1 to 5 stars (★★★★★) with 5 being the highest.
Source: National Highway Traffic Safety Administration (NHTSA)
www.safercar.gov or 1-888-327-4236

The safety ratings above are based on Federal Government tests of particular vehicles
equipped with certain features and options. The performance of this vehicle may differ.

---

## PARTS CONTENT INFORMATION

**FOR VEHICLES IN THIS CARLINE:**
U.S./CANADIAN PARTS CONTENT: 59%

**MAJOR SOURCES OF FOREIGN PARTS
CONTENT:**
MEXICO : 23%

NOTE: PARTS CONTENT DOES NOT INCLUDE FINAL
ASSEMBLY, DISTRIBUTION, OR OTHER
NON-PARTS COSTS.

**FOR THIS VEHICLE:**
FINAL ASSEMBLY POINT:
DETROIT, MICHIGAN, U.S.A.
COUNTRY OF ORIGIN:
ENGINE: MEXICO
TRANSMISSION: UNITED STATES

## FlexCare
**VEHICLE PROTECTION**
Ask for FlexCare Vehicle Protection. We Built It. We Back It.

Exhibit "B"

# LAW 553-NY-B-A-eps 9/24

## RETAIL INSTALMENT CONTRACT
### SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| GINA ROSE GAGLIARDI<br>31 ESSEX DR<br>CORAM, NY SUFFOLK, 11727<br><br>Cell: N/A<br>Email: GINAROSE703@GMAIL.COM | N/A<br><br><br><br>Cell: N/A<br>Email: N/A | PORT JEFF CHRYSLER JEEP<br>5130 NESCONSET HIGHWAY<br>P. JEFFERSON STATION, NY 11776 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| DEMO | 2025 | JEEP GRAND CHEROKEE | 1C4RJHAG7SC326314 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural   ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 10,250.00  is |
|---|---|---|---|---|
| 7.74 % | $ 16,928.98 | $ 56,733.98 | $ 73,662.96 | $ 83,912.96 |

**GAP Waiver Notice**

☐ If this box is checked, and if the vehicle is a total loss because it is confiscated, damaged, or stolen, you will not be liable for the gap amount. The gap amount is the excess, if any, of (1) the amount you would owe under this contract as of the date of loss if the vehicle were not a total loss and you were to prepay the contract in full (less any refunds we get for cancelling optional insurance, maintenance, service or other contracts), over (2) the sum of (a) any past due payments and other amounts due because you broke promises in this contract and (b) the actual cash value of the vehicle immediately before the loss.

### Your Payment Schedule Will Be:
(e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | $ 876.94 | Monthly beginning 03/30/2026 |
| One Final Payment Of | $ N/A | On N/A |
| N/A | | |

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __1.00__ or __5__ % of the part of the payment that is late, whichever is __greater__.

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 2 of the Itemization of Amount Financed as the "Payoff Made by Seller." You understand that the amount quoted is an estimate.

If the actual payoff amount is more than the amount shown in 2 you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 2 Seller will refund to you any overage Seller receives from your prior lienholder or lessor.

Buyer Signature X _[signature]_

Co-Buyer Signature X N/A

### WARRANTIES

The following paragraph does not affect any warranties covering the vehicle that the manufacturer may provide or limit any rights you may have under the Lemon Laws or, for used vehicles, under the certificate of serviceability that was included in your purchase contract. The following paragraph also does not apply if the vehicle is a used vehicle you bought in New York City.

**Unless the Seller makes a written warranty or enters into a service contract within 90 days of the date of this contract, the Seller makes no warranties on the vehicle. Making no warranties means that you get no express warranties, and no implied warranties of merchantability or fitness for a particular purpose.**

The following notice only applies to used vehicles bought in New York City:

**NYC DEPARTMENT OF CONSUMER AND WORKER PROTECTION LICENSE NO. N/A . IF YOU HAVE A COMPLAINT ABOUT THIS BUSINESS VISIT NYC.GOV/DCWP OR CONTACT 311.**

☐ If checked, your last installment payment under this contract is a balloon payment ("Balloon Payment"). You have the option to do one or more of the following, as checked, at the time the Balloon Payment is due:

a) ☐ You may pay your Balloon Payment when due.

b) ☐ You may refinance the Balloon Payment. See paragraph 1.e. on page 3 of this contract for details.

c) ☐ You may sell the vehicle back to us. See paragraph 1.e. on page 3 of this contract for details. If you exercise this option, $ __N/A__ per mile for each mile in excess of __N/A__ miles shown on the odometer will be deducted from the sale price. The sale price will also be adjusted for excess wear and use as provided in paragraph 1.e.

Buyer Signs X _[signature]_          Co-Buyer Signs X N/A

LAW 553-NY-B-A-eps 9/24 v1   Page 1 of 6

## ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (Including $ 2,456.48 _____ sales tax)     $ _____ 63,099.55 (1)

2 Total Downpayment =

Your trade-in is a 2025 SUBARU CROSSTREK    JF2GUHDC8S8283579
Year    Make    Model    Vehicle Identification No.

| | |
|---|---|
| Gross Trade-in Allowance | $ 36,144.07 |
| Less Payoff Made By Seller to JPMORGAN CHASE BANK NA (e) | $ 36,144.07 |
| Equals Net Trade In | $ N/A |
| + Cash | $ 5,000.00 |
| + Other REBATE-5250 | $ 5,250.00 |
| + Other N/A | $ N/A |
| + Other N/A | $ N/A |

(If total downpayment is negative, enter "0" and see 4I below)    $ 10,250.00 (2)

3 Unpaid Balance of Cash Price (1 minus 2)    $ 52,849.55 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf

(Seller may keep part of these amounts):

A Cost of Optional Credit Insurance Paid to Insurance Company or Companies
Life    $ N/A
Disability    $ N/A    $ N/A

B Vendor's Single Interest Insurance Paid to Insurance Company    $ N/A

C Other Optional Insurance Paid to Insurance Company or Companies    $ N/A

D Official Fees Paid to Government Agencies

| | | |
|---|---|---|
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |

E Government Taxes Not Included in Cash Price    $ N/A

F Government License and/or Registration Fees
N/A
REGISTRATION-286.93    $ 286.93

G Government Certificate of Title Fees    $ N/A

H Government Waste Tire Management Fee    $ 12.50

I Other Charges (Seller must identify who is paid and describe purpose)

| | | |
|---|---|---|
| to N/A | for Prior Credit or Lease Balance (e) | $ N/A |
| to DEALER | for DOCUMENTATION FEE | $ 175.00 |
| to STATE | for VEHICLE INSPECTION FEE | $ 10.00 |
| to PORTFOLIO | for SERVICE CONTRACT | $ 3,400.00 |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |
| to N/A | for N/A | $ N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf    $ 3,884.43 (4)

5 Amount Financed (3 + 4)    $ 56,733.98 (5)

---

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
_____ N/A _____ , Year N/A . SELLER'S INITIALS N/A

---

**Returned Check Charge:** You agree to pay a charge of $ 20 if any check you give us is dishonored.

---

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

---

Buyer Signs X _[signature]_     Co-Buyer Signs X N/A

---

Insurance. You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Check the insurance you want and sign below:
### Optional Credit Insurance

☐ Credit Life:   ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability:   ☐ Buyer   ☐ Co-Buyer   ☐ Both
Premium:
   Credit Life $ N/A
   Credit Disability $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☐ _____ N/A _____    N/A
   Type of Insurance    Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

☐ _____ N/A _____    N/A
   Type of Insurance    Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. I want the insurance checked above.

X N/A     N/A
Buyer Signature     Date

X N/A     N/A
Co-Buyer Signature     Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **Balloon Payment Options.** Your Balloon Payment is due and payable as disclosed on page 1 of this contract. Because the contract is a simple finance charge contract, your Balloon Payment may differ from the amount shown depending on your payment habits. If checked on page 1 of the contract, you have the following options.
      *Pay in Full.* You may pay the Balloon Payment in full when due.
      *Refinance.* You may refinance the Balloon Payment unless you are in default under the contract. If we have advanced funds to cure any default, you must pay us back before the refinancing. You also must provide proof of insurance acceptable to us before the refinancing. The annual percentage rate for the refinancing will be the lower of the rate agreed to by you and us at the time of refinancing or the maximum rate permitted by law. The term of the refinancing will be based on the amount refinanced, the rate, and the amount of the monthly payment. The refinanced monthly payment will be the same as in this contract if the refinanced amount will be fully paid within 36 months of the due date of the Balloon Payment. Otherwise, the monthly payment amount will be the amount needed to fully pay the refinanced amount within 36 months of the due date of the Balloon Payment. If you wish to refinance, you must notify us in writing. The notice must be received no later than 30 days prior to the due date of the Balloon Payment. If you choose to refinance the Balloon Payment at the time the Balloon Payment is due, we will provide you with the disclosures required under the federal Truth in Lending Act in the agreement to refinance we make with you. Both you and we must sign the agreement to refinance.
      *Sell Back.* You may sell the vehicle to us for an amount equal to the Balloon Payment. You must pay us any other amount owed under the contract. The amount you owe will be based, in part, on the vehicle's mileage. You also must pay us the estimated costs of all repairs to the vehicle that are the result of excess mileage and excess wear and use, as described below and on page 1 of this contract. You must

take the vehicle for inspection, to a place we select, no later than 15 days prior to the Balloon Payment due date. After the inspection, if you decide to sell the vehicle to us, you must deliver the vehicle to us no later than the Balloon Payment due date. At that time, you must also give us a title, which shows no liens other than our lien, transferring ownership to us or a person we select. After the inspection, if you decide not to sell the vehicle to us, you must immediately contact us and tell us whether you want to pay or refinance the last installment payment.

You must pay us the excess mileage fee shown on page 1 of this contract. You are also responsible for repairs of all damage to the vehicle that is the result of excess wear and use. These repairs include, but are not limited to:
   • Replace any tire not part of a matching set of four or any tire which has less than 1/8 inch of remaining tread.
   • Repair all mechanical defects.
   • Repair or replace all dented, scratched, chipped, rusted or mismatched body panels, paint or vehicle identification items; all dented, scratched, rusted, pitted, broken or missing trim and grill work; all scratched, cracked, pitted or broken glass; all faulty window mechanisms; all stains, burns or worn areas; and all damage which would be covered by collision or comprehensive insurance whether or not such insurance is actually in force.

If you have not made the repairs before inspection of the vehicle you will owe the estimated costs of such repairs, even if the repairs are not made prior to your sale of the vehicle to us. If you disagree with the estimated costs of repairs, you may have the repairs made at your expense prior to your sale of the vehicle to us.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is confiscated, damaged, or stolen.**
      The following paragraph does not apply if the box in the GAP Waiver Notice on page 1 of this contract is checked.
      You agree to pay us all you owe under this contract even if the vehicle is confiscated, damaged, or stolen. The terms and conditions of your liability if the vehicle is confiscated, damaged, or stolen are described in a separate document you sign. The document is a part of this contract.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

Buyer Signs X ~~[signature]~~   Co-Buyer Signs X N/A

d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we may subtract the refund from what you owe.

---

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once subject to any right you have to reinstate the contract for less (see below). Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information during credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Prepaid Finance Charge and the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's fee and court costs as permitted by law. The maximum attorney's fee you will pay will be 15% of the amount you owe.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back. If two things are true, you have the right to get the vehicle back by paying all past due payments, any late charges, and any expenses we incurred related to retaking the vehicle, holding it, and preparing it for sale (reinstate). First, you must have bought the vehicle primarily for personal, family, or household use. Second, your only default is a failure to pay an instalment payment on time. Otherwise, we will tell you how much to pay to get the vehicle back. Your right to get the vehicle back ends when we sell it.

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

---

4. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

Spanish Translation: **Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

---

## 5. SERVICING AND COLLECTION CONTACTS

In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.

You agree that you will, within a reasonable time, notify us of any change in your contact information.

---

## 6. APPLICABLE LAW

Federal law and the law of the state of New York apply to this contract.

---

## 7. NEGATIVE CREDIT REPORT NOTICE

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

Buyer Signs X _~~signature~~_     Co-Buyer Signs X N/A     LAW 553-NY-B-A-eps 9/24 v1   Page 4 of 6

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _~signature~_ _____    Co-Buyer Signs X _N/A_ _____

## NO COOLING OFF PERIOD UNLESS YOU HAVE A CONTRACT CANCELLATION OPTION

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales. It also does not apply if you buy a used vehicle from a Seller-Creditor located in New York City and you did not decline your option to cancel. The laws of New York City provide a two-day cancellation option if you buy a used vehicle. This cancellation option is subject to certain conditions. See the NYC Used Car Contract Cancellation Option agreement for details.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

---

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.          Buyer Signs X _[signature]_          Co-Buyer Signs X N/A

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See the rest of this contract for other important agreements.

**NOTICE TO BUYER: 1. Do not sign this agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of this agreement. 3. Under the law, you have the right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either: (a) prepay without penalty, or (b) under certain circumstances obtain a rebate of the credit service charge. 4. According to law you have the privilege of purchasing the insurance on the motor vehicle provided for in this contract from an agent or broker of your own selection.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

## RETAIL INSTALMENT CONTRACT

Buyer Signs X _[signature]_          Date 02/28/2026   Co-Buyer Signs X N/A          Date N/A

Buyer Printed Name GINA ROSE GAGLIARDI          Co-Buyer Printed Name N/A

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A          Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X N/A          Address N/A

Seller Signs PORT JEFF CHRYSLER JEEP          Date 02/28/2026   By X _[signature]_          Title Finance Manager

Seller assigns its interest in this contract to M&T Bank          (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse          ☒ Assigned without recourse          ☐ Assigned with limited recourse

Seller PORT JEFF CHRYSLER JEEP

By X _[signature]_          Title Finance Manager

**LAW** FORM NO. 553-NY-B-A-eps (REV. 9/24)
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW 553-NY-B-A-eps 9/24 v1     Page 6 of 6

Exhibit "C"

Case 2:26-cv-02961-KAM-ARL   Document 14-2   Filed 07/16/26   Page 13 of 15 PageID #: 48

PORT JEFF CJDR
5130 Nesconset Hwy
Port Jefferson Stati, NY 11776

**PJ Port Jeff**
80773

# BILL OF SALE

| | |
|---|---|
| SOLD TO<br>GINA ROSE GAGLIARDI | DATE<br>02/28/2026 |

| ADDRESS |
|---|
| 31 ESSEX DR CORAM, NY 11727 |

| | YEAR | MAKE | MODEL | KEY NO. |
|---|---|---|---|---|
| ☒ NEW ☐ USED | 2025 | JEEP | GRAND CHEROKEE | |

| VIN | ODOM |
|---|---|
| 1C4RJHAG7SC326314 | 2,442 |

## TRADE-IN INFORMATION

| YEAR | MAKE | MODEL | MILEAGE |
|---|---|---|---|
| 2025 | SUBARU | CROSSTREK | 7,716 |

| VIN |
|---|
| JF2GUHDC8S8283579 |

## INSURANCE COVERAGE INCLUDES

☐ FIRE AND THEFT                    ☐ PUBLIC LIABILITY - AMT.

☐ COLLISION - AMT. DEDUCT           ☐ PROPERTY DAMAGE - AMT.

## OPTIONAL EQUIPMENT AND ACCESSORIES

GROUP:            DESCRIPTION:            PRICE:

Buyer certifies that he is over twenty one years of age and is competent to execute this sales agreement. Buyer further certifies that he has inspected and road tested this vehicle prior to payment and is satisfied as to condition of steering mchanism, tires, glass lights, brakes, horn, signals, windshield wipers, exhaust system and certifies that vehicle has been delivered by dealer in good order, together with copy of this bill of sale, a copy of finance contract, if any, and a copy of the warranty applicable.

SIGNATURE _Gina R Gagli_____

"DEALER'S OPTIONAL FEE FOR PROCESSING APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE, AND FOR SECURING SPECIAL OR DISTINCTIVE PLATES (IF APPLICABLE). THIS IS NOT A DMV FEE *$_____

*THE OPTIONAL DEALER REGISTRATION OR TITLE APPLICATION PROCESSING FEE ($175.00 MAXIMUM) AND SPECIAL PLATE PROCESSING FEE ($5.00 MAXIMUM) ARE NOT NEW YORK STATE OR DEPARTMENT OF MOTOR VEHICLES FEES. UNLESS A LIEN IS BEING RECORDED OR THE DEALER ISSUED NUMBER PLATES, YOU MAY SUBMIT YOUR OWN APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE OR FOR A SPECIAL OR DISTINCTIVE PLATE TO ANY MOTOR VEHICLE ISSUING OFFICE.

M&T BANK
PO BOX 17202

| | | |
|---|---|---|
| PRICE OF VEHICLE | | 60,643.07 |
| OPTIONAL EQUIP AND ACCESSORIES | | |
| PORTFOLIO VSC | | 3,400.00 |
| SALES TAX | | 2,456.48 |
| LICENSE AND TITLE | | 309.43 |
| DOC FEE | | 175.00 |
| TOTAL CASH PRICE | | 66,983.98 |
| FINANCING | | 16,928.98 |
| INSURANCE | | N/A |
| TOTAL TIME PRICE | | 83,912.96 |

| SETTLEMENT | | |
|---|---|---|
| DEPOSIT | | |
| CASH ON DELIVERY | | 5,000.00 |
| TRADE-IN U8882 | | 36,144.07 |
| LESS LIEN JPMORGAN CHASE BANK NA | | 36,144.07 |
| | | N/A |
| REBATE | | 5,250.00 |
| PAYMENTS | | |
| 84  PAYMENTS OF | 876.94 | 58,733.98 |
| | | |
| | | |
| TOTAL | | 73,682.96 |

BUYER: _Gina R Gagli_

CO-BUYER: _Gina R Gagli_

POJE_PO1_BOS 02/25

Exhibit "D"



New York State Department of Motor Vehicles
## RETAIL CERTIFICATE OF SALE RECEIPT

### No. E1190122202026

E119012202026

**TYPE OF SALE**

☑ New ☐ Used ☐ Demo ☐ Salvage

☐ COO Review Required

## VEHICLE INFORMATION:

| Year | Make | Model | Body Type | Color1 | Color2 | Weight (Unladen) | Fuel Type | Cylinders | Adult Seating Capacity |
|------|------|-------|-----------|--------|--------|------------------|-----------|-----------|------------------------|
| 2025 | JEEP | GRAND CHEROKEE | SUV | GY · | N/A | 4450 | G | 6 | 5 |

| Vehicle Identification Number | Lien(s) | Inspection Certificate Number | Date of Inspection | Inspection Station Number |
|---|---|---|---|---|
| 1 C 4 R J H A G 7 S C 3 2 6 3 1 4 | 1 | 0042400391 | 02-28-2026 | 7060519 |

| Plate/Permit Number | Dealer/Transporter Plate Loaned | ☐ Lease Buyout (Insp. Not Required) | Selling Price |
|---|---|---|---|
| MCK8019 | N/A | | $60643 |

## DEALER INFORMATION:

PORT JEFF CHRYSLER JEEP INC, 5130 NESCONSET HWY, PT JEFF, NY, 11776, Suffolk

| **PURCHASER INFORMATION:** | **Date of Sale** |
|---|---|
| GINA ROSE GAGLIARDI, 31 ESSEX DR, CORAM, NY, 11727 | 02-28-2026 |

| **PRIOR OWNER INFORMATION:** | **Date of Purchase** |
|---|---|
| FCA US LLC, 1000 CHRYSLER DR, AUBURN HILLS, MI, 48326, Manufacturer Certificate Of Origin (34045131) | 06-13-2025 |

## ODOMETER DISCLOSURE STATEMENT:

Federal and state laws require that you state the mileage of the vehicle described on the certificate, when transferring ownership. Failure to do so, or not telling the truth about the mileage may result in fines and/or imprisonment.

☑ I certify that, to the best of my knowledge, this odometer reading reflects the "ACTUAL MILEAGE" of the vehicle described above.

☐ I certify that, to the best of my knowledge, this odometer reading "EXCEEDS MECHANICAL LIMITS."

| ODOMETER READING | | | | | | |
|---|---|---|---|---|---|---|
| 0 | 0 | 0 | 2 | 4 | 4 | 2 |
| (no tenths) | | | | | | |

☐ I certify that, to the best of my knowledge, this odometer reading is "NOT ACTUAL MILEAGE. WARNING: ODOMETER DISCREPANCY."

Check your odometer reading at: | verifiny.com/check | Processing States with questions about this eMV-50 may contact 1 833 VERIFI NY (1 833 837-4346)

## DEALER CERTIFICATION

*I certify:* The vehicle described above was sold to the purchaser on the date indicated. At the time of delivery the purchaser was entitled to register the vehicle. This vehicle complied with equipment requirements of the Commissioner's Regulations. At the time of delivery, such equipment was in condition and repair to render satisfactory and adequate service on the public highway under normal use. The dealer named above further certifies that this vehicle complies with the inflatable restraint system requirements in section 419-a of New York State Vehicle and Traffic Law. Equipment certification does not apply to a vehicle sold as new, wholesale, or salvage. All New York State and local taxes due as a result of this sale have been collected from the purchaser. False statements made herein are punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law.

| DEALER (or authorized representative) - (SIGN full name) | PRINT full name of dealer or authorized rep. | Date | Dealer Facility No. |
|---|---|---|---|
| *[signature]* | PORT JEFF CHRYSLER JEEP INC | 2/28/26 | 7060519 |

## PURCHASER CONFIRMATION

Additional odometer history for this vehicle, if available, can be found at: verifiny.com/check
By signing, the purchaser affirms the odometer reading on this receipt is accurate.

| PURCHASER - (SIGN full name) | PRINT full name of purchaser | Date | Selling Dealer NYS Sales Tax No. |
|---|---|---|---|
| *[signature]* | GINA ROSE GAGLIARDI | 2/28/26 | 11-3118267 |

The authenticity of this document can be verified at verifiny.com/check

### *Any change or Alteration voids this receipt*