UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

GINA R. GAGLIARDI,

       *Plaintiff,*

       – against –

PORT JEFF CHRYSLER JEEP INC.,

       *Defendant.*

-----------------------------------------------------------------------X

2:26-cv-02961 (KAM) (ARL)

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S MOTION
## FOR A DEFAULT JUDGMENT

David M. Kasell, Esq.
Kasell Law Firm
Attorney for Plaintiff Gina R. Gagliardi
1038 Jackson Avenue, Suite #4
Long Island City, New York 11101
(718) 404-6668

1

## PRELIMINARY STATEMENT

Plaintiff Gina R. Gagliardi respectfully submits this memorandum of law in support of her motion, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, for entry of a default judgment against Defendant Port Jeff Chrysler Jeep Inc. The Clerk of the Court has entered Defendant's default, Defendant having failed to answer, appear, or otherwise defend this action within the time prescribed by law. ECF No. 10.

This action arises from a straightforward but serious consumer deception. Plaintiff went to Defendant's dealership to purchase a new motor vehicle. Compl. ¶ 13; Gagliardi Aff. ¶ 2. Defendant represented that the vehicle it sold her was new, and both the bill of sale and the New York Retail Certificate of Sale (MV-50) issued to Plaintiff identified it as new. Compl. ¶¶ 17–18; Gagliardi Aff. ¶ 11 & Exs. C–D. In truth, the vehicle was a used demonstrator that had already been driven at least 2,442 miles—a fact disclosed only in the Retail Installment Sale Contract ("RISC"), which Plaintiff discovered only after Defendant had kept her at the dealership for more than five hours. Compl. ¶¶ 16, 18; Gagliardi Aff. ¶¶ 6, 10–11 & Exs. B, D. And while the manufacturer's window sticker advertised the vehicle at $48,375, the paperwork Defendant provided charged Plaintiff $60,643.07—an unexplained increase of $ $12,268.07 that Defendant never disclosed as the finance charge it was. Compl. ¶¶ 2–3, 14–15; Gagliardi Aff. ¶¶ 8–9 & Exs. A–B.

Because Defendant has defaulted, the well-pleaded allegations of the Complaint are deemed admitted, and they establish Defendant's liability under the Truth in Lending Act and Regulation Z, under New York General Business Law §§

349 and 350, and for common-law fraud. Plaintiff is entitled to judgment on liability and to the relief the Complaint demands: rescission of the transaction and restitution, together with actual damages, statutory damages, attorney's fees, and costs, in the amounts established by the accompanying affidavit of Gina R. Gagliardi and its exhibits.

## PROCEDURAL BACKGROUND

Plaintiff filed her Complaint on May 18, 2026. ECF No. 1. Defendant was served through the New York Secretary of State on May 26, 2026, and proof of service was filed on May 27, 2026. ECF No. 7. Defendant failed to answer, appear, or otherwise move within the time prescribed by Rule 12(a) of the Federal Rules of Civil Procedure. Plaintiff thereafter requested a Clerk's certificate of default, and on July 1, 2026, the Clerk entered Defendant's default pursuant to Rule 55(a). ECF No. 10. Plaintiff now moves, under Rule 55(b), for entry of a default judgment.

### A. This Court Has Jurisdiction, and Venue Is Proper.

The Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, because Plaintiff asserts claims arising under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* Compl. ¶ 10. The Court has supplemental jurisdiction over Plaintiff's related New York statutory and common-law claims under 28 U.S.C. § 1367, because those claims form part of the same case or controversy. Compl. ¶ 11. The Truth in Lending Act separately authorizes suit in "any United States district court" within one year of the violation. 15 U.S.C. § 1640(e). Venue is proper in this District under 28 U.S.C. § 1391 because a

3

substantial part of the events and omissions giving rise to the claims occurred within this District. Compl. ¶ 12.

## STATEMENT OF FACTS

Plaintiff Gina R. Gagliardi is a natural person residing in the State of New York and a consumer within the meaning of the applicable consumer-protection statutes. Compl. ¶ 7; Gagliardi Aff. ¶ 1. Defendant Port Jeff Chrysler Jeep Inc. is a domestic business corporation with its principal place of business in Suffolk County, New York, engaged in the business of selling, financing, and servicing motor vehicles to consumers. Compl. ¶¶ 8–9.

Plaintiff wanted to buy a new Jeep Grand Cherokee, and she visited Defendant's dealership for the purpose of purchasing a new motor vehicle. Compl. ¶ 13; Gagliardi Aff. ¶ 2. Defendant's salesperson showed Plaintiff a new Jeep Grand Cherokee in the showroom, and Plaintiff liked the car. Gagliardi Aff. ¶¶ 3–4. Rather than selling Plaintiff the new vehicle in the showroom, however, Defendant arranged the transaction for a different vehicle, telling Plaintiff that the showroom vehicle had been sold while she was out on a test drive. Gagliardi Aff. ¶ 5.

The manufacturer's window sticker on the vehicle Plaintiff purchased (the "Vehicle") listed a price of $48,375. Compl. ¶¶ 2, 14; Gagliardi Aff. ¶ 8 & Ex. A. But the paperwork Defendant provided told a different story: the RISC that Plaintiff executed charged her $60,643.07. for the Vehicle. Compl. ¶¶ 3, 15; Gagliardi Aff. ¶ 9 & Ex. B.

Defendant represented to Plaintiff that the Vehicle was new, and the bill of sale and the Retail Certificate of Sale (MV-50) issued to Plaintiff both identified the

4

Vehicle as new. Compl. ¶¶ 17–18; Gagliardi Aff. ¶ 11 & Exs. C–D. In fact, the Vehicle was not new: the RISC identified it as a demonstrator, or "demo," and it had already been driven at least 2,442 miles at the time of purchase. Compl. ¶¶ 16, 18; Gagliardi Aff. ¶¶ 10–11 & Exs. B, D.

Plaintiff did not learn any of this until the end of a purchase process in which Defendant kept her at the dealership for more than five hours, until closing. Gagliardi Aff. ¶ 6. When Plaintiff left to retrieve her passport—the dealership having demanded a second form of identification—she saw for the first time that she was purchasing a demonstrator. Gagliardi Aff. ¶ 6. Plaintiff immediately informed the dealership that she did not want the Vehicle; Defendant's representative refused to discuss the issue, insisting that Plaintiff had gotten a "great deal." Gagliardi Aff. ¶ 7. Plaintiff thereafter returned to the dealership and asked Defendant to take the Vehicle back, and Defendant again refused. Gagliardi Aff. ¶ 12.

Plaintiff relied upon Defendant's representations and omissions in entering into the transaction; had she known the Vehicle was not new, she would not have purchased it. Compl. ¶ 19; Gagliardi Aff. ¶ 13. Defendant's conduct caused Plaintiff to sustain monetary damages and other consequential harm. Compl. ¶ 20.

## LEGAL STANDARD GOVERNING DEFAULT JUDGMENTS

Rule 55 establishes a two-step process for obtaining a default judgment: the clerk first enters the defaulting party's default under Rule 55(a), and then, on the plaintiff's application, the court may enter a default judgment under Rule 55(b). *See*

Fed. R. Civ. P. 55; *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The Clerk having entered Defendant's default, ECF No. 10, the first step is complete.

Upon the entry of default, a "defendant's default is deemed to constitute a concession of all well-pleaded allegations of liability," and those allegations are accepted as true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Easterly v. Tri-Star Transp. Corp.*, No. 11 Civ. 6365 (VB)(PED), 2014 U.S. Dist. LEXIS 180999, at *8–9 (S.D.N.Y. Nov. 19, 2014). The court's task is to determine whether those admitted allegations "establish [the defendant's] liability as a matter of law." *Finkel v. Romanowski*, 577 F.3d 79, 84 (2d Cir. 2009); *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). As shown below, the Complaint's well-pleaded allegations establish Defendant's liability on each cause of action.

As to damages, a default "is not considered an admission of damages," and the court must ensure "that there is a basis for the damages specified in [the] default judgment." *Greyhound*, 973 F.2d at 158; *accord Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). The court "may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence," and it need not hold an evidentiary hearing. *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 283–84 (E.D.N.Y. 2010); *see Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015); Fed. R. Civ. P. 55(b)(2). Plaintiff submits the accompanying affidavit of Gina R. Gagliardi and its exhibits—the window sticker (Ex. A), the RISC (Ex. B),

the bill of sale (Ex. C), and the MV-50 (Ex. D)—as the evidentiary basis for the relief requested.

## ARGUMENT

### POINT I
### THE WELL-PLEADED ALLEGATIONS ESTABLISH DEFENDANT'S LIABILITY UNDER THE TRUTH IN LENDING ACT

Congress enacted the Truth in Lending Act "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). The Act "endeavors to enable consumers to evaluate credit offers separately from the purchase of the merchandise, and thereby to create an active market providing more efficient credit prices." *Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 39 (2d Cir. 2011) (quoting *Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 326 (6th Cir. 2001)). Because TILA is "remedial in nature," its terms "must be construed in a liberal fashion if the underlying Congressional purpose is to be effectuated," *N.C. Freed Co. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973), and "once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability," *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976).

**A. Defendant Is a Creditor Within the Meaning of TILA and Regulation Z.**

TILA defines a "creditor" as a person who "both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially

7

payable." 15 U.S.C. § 1602(f). Regulation Z is to the same effect, defining a creditor as a person who "regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than [four] installments . . . and to whom the obligation is initially payable." 12 C.F.R. § 1026.2(a)(17). Defendant is a creditor within the meaning of both. Defendant is in the business of selling and financing motor vehicles to consumers, Compl. ¶ 9; it extended credit to Plaintiff through the RISC, for which a finance charge was imposed and which is payable in more than four installments, Compl. ¶ 15; Gagliardi Aff. ¶ 9 & Ex. B; and the debt was initially payable to Defendant, Gagliardi Aff., Ex. B.

### B. Defendant Failed to Deliver the Material Disclosures TILA Requires Because It Financed a Price Far Exceeding the Advertised Price.

In a consumer credit transaction, TILA requires the creditor to disclose the "amount financed," computed by taking "the principal amount of the loan or the cash price less downpayment and trade-in." 15 U.S.C. § 1638(a)(2)(A), (a)(2)(A)(i). The accuracy of that disclosure depends on the accuracy of the cash price on which it is built. Here, Defendant advertised the Vehicle at $48,375 on the manufacturer's window sticker, Compl. ¶¶ 2, 14; Gagliardi Aff. ¶ 8 & Ex. A, but charged Plaintiff $63,099.55 on the RISC, Compl. ¶¶ 3, 15; Gagliardi Aff. ¶ 9 & Ex. B—an unexplained increase of $14,724.55 over the advertised price. By financing the sale at a price inflated far above the price at which it advertised and offered the Vehicle, Defendant failed to deliver an accurate disclosure of the Vehicle's cash price and amount financed, as TILA requires. Compl. ¶¶ 22–23.

8

**C. The Undisclosed Increase From the Advertised Price to the Financed Price Is a Finance Charge That TILA Required Defendant to Disclose.**

TILA separately requires disclosure of the "finance charge." 15 U.S.C. § 1638(a)(3). A finance charge is "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a); *accord* 12 C.F.R. § 1026.4(a) (finance charge is "the cost of consumer credit as a dollar amount," including any charge "imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit"). Critically, the finance charge "does not include charges of a type payable in a comparable cash transaction." 15 U.S.C. § 1605(a). It follows that "[a]n increase in the base price of an automobile that is not charged to a cash customer, but is charged to a credit customer, solely because he is a credit customer, triggers TILA's disclosure requirements." *Cornist*, 272 F.3d at 327.

That is precisely what occurred here. Although the Vehicle was advertised at $48,375, Gagliardi Aff. ¶ 8 & Ex. A; Compl. ¶ 14, the RISC Defendant prepared charged Plaintiff $63,099.55, Gagliardi Aff. ¶ 9 & Ex. B; Compl. ¶ 15. That $14,724.55 increase—a charge imposed on Plaintiff as a credit customer and nowhere reflected in the price at which Defendant advertised and offered the Vehicle—is a finance charge that Defendant was required to disclose as such. Nowhere in the RISC did Defendant disclose that $14,724.55 as a finance charge. Compl. ¶¶ 22–23; *see* Gagliardi Aff., Ex. B. Defendant thereby violated TILA's

9

finance-charge disclosure requirement, and its liability follows "no matter how technical" the violation. *Grant*, 539 F.2d at 510.

## POINT II
## DEFENDANT VIOLATED NEW YORK GENERAL BUSINESS LAW § 349

New York General Business Law § 349(a) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," and § 349(h) affords a private right of action to any person injured by reason of such a violation. To prevail, a plaintiff must establish "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000); *accord Oswego Laborers' Local 214 Pension Fund v. Mar. Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). A claim under § 349 is not subject to the heightened pleading standard of Rule 9(b) and need only satisfy Rule 8(a). *Cohen v. Hertz Corp.*, No. 13 Civ. 1205 (LTS)(AJP), 2013 WL 9450421, at *5 (S.D.N.Y. Nov. 26, 2013). The admitted allegations, confirmed by Plaintiff's sworn affidavit, satisfy each element.

### A. Defendant Engaged in Consumer-Oriented Conduct.

The challenged conduct "need not be repetitive or recurring," but the defendant's "acts or practices must have a broad impact on consumers at large." *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 11–12 (2d Dep't 2012). The prong is satisfied where the acts complained of "potentially affect similarly situated consumers." *Oswego*, 85 N.Y.2d at 27. Here, Defendant's conduct was quintessentially consumer-oriented: Defendant advertised the Vehicle to the

10

public on a manufacturer's window sticker, Compl. ¶ 14; Gagliardi Aff. ¶ 8 & Ex. A; represented the Vehicle as new on standardized, legally required documents—the bill of sale and the MV-50, Compl. ¶¶ 17–18; Gagliardi Aff. ¶ 11 & Exs. C–D; and then raised the price and financed the sale on a form Retail Installment Sale Contract, Compl. ¶ 15; Gagliardi Aff. ¶ 9 & Ex. B. Any consumer who saw the window sticker and sought to purchase the Vehicle would have been subject to the same misrepresentations and the same undisclosed price increase. Compl. ¶¶ 25–26.

### B. Defendant's Conduct Was Materially Misleading.

The inquiry is objective, asking whether the challenged act is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26; *Stutman*, 95 N.Y.2d at 29. Defendant's conduct was materially misleading in two independent respects. First, Defendant advertised the Vehicle at $48,375 and then charged a materially higher price of $63,099.55. Compl. ¶¶ 14–15, 26; Gagliardi Aff. ¶¶ 8–9 & Exs. A–B. Second, Defendant represented in the bill of sale and MV-50 that the Vehicle was new when it was, in fact, a used demonstrator that had already been driven at least 2,442 miles. Compl. ¶¶ 16–18, 26; Gagliardi Aff. ¶¶ 10–11 & Exs. B–D. A reasonable consumer would be misled by both. *Cf. Singh v. Queens Ledger Newspaper Grp.*, 2 A.D.3d 703, 704 (2d Dep't 2003) (material-misleading element satisfied where a consumer product was mislabeled).

### C. Plaintiff Suffered Actual Injury.

Section 349 requires proof of "actual injury," though not necessarily pecuniary harm. *Stutman*, 95 N.Y.2d at 29; *Amalfitano v. NBTY Inc.*, 128 A.D.3d

11

743, 745–46 (2d Dep't 2015). Plaintiff was injured as a direct result of Defendant's deception: she paid $63,099.55 for a Vehicle advertised at $48,375, Gagliardi Aff. ¶¶ 8–9 & Exs. A–B; Compl. ¶¶ 14–15, and received a used demonstrator represented to her as new, Gagliardi Aff. ¶¶ 10–11, 13 & Exs. B–D; Compl. ¶¶ 16–18. She would not have purchased the Vehicle at all had she known the truth. Gagliardi Aff. ¶ 13; Compl. ¶ 19. That is a cognizable injury under § 349. *See Singh*, 2 A.D.3d at 705; Compl. ¶¶ 20, 27. Because Defendant's deceptive conduct was knowing—Defendant itself prepared the very documents that contradicted one another, Gagliardi Aff. ¶¶ 9–11 & Exs. B–D—Plaintiff is entitled not only to her actual damages but to treble damages and attorney's fees under § 349(h). *Stutman*, 95 N.Y.2d at 29.

## POINT III
## DEFENDANT VIOLATED NEW YORK GENERAL BUSINESS LAW § 350

New York General Business Law § 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To prevail, a plaintiff must show that the advertisement "(1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in [the plaintiff's] injury." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) (quoting *Andre Strishak & Assocs., P.C. v. Hewlett-Packard Co.*, 300 A.D.2d 608, 609 (2d Dep't 2002)), *aff'd*, 626 F. App'x 335 (2d Cir. 2015). Section 350 claims are analyzed under substantially the same standard as Lanham Act false-advertising claims. *Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 20 (E.D.N.Y. 2009); *see Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 155 F. Supp. 2d 1, 25 (S.D.N.Y. 2001).

## A. Defendant's Advertisement Was Literally False.

When an advertisement is shown to be literally false, consumer deception is presumed, and "the court may grant relief without reference to the advertisement's impact on the buying public." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). Defendant's window-sticker advertisement of the Vehicle at $48,375, Compl. ¶ 14; Gagliardi Aff. ¶ 8 & Ex. A, was literally false when considered in light of the $63,099.55 that Defendant actually charged Plaintiff on the RISC, Compl. ¶ 15; Gagliardi Aff. ¶ 9 & Ex. B. So too was Defendant's representation—on the bill of sale and the MV-50—that the Vehicle was new, when the RISC itself identified it as a demonstrator. Compl. ¶¶ 17–18, 28; Gagliardi Aff. ¶¶ 10–11 & Exs. B–D. Because the advertised price and status of the Vehicle were unambiguously false, consumer deception must be presumed, and this Court may grant relief without reference to the advertisement's actual impact on the buying public. *Time Warner Cable*, 497 F.3d at 153.

## B. Defendant's False Advertisement Was Deceptive and Misleading in a Material Way.

For the reasons stated as to § 349, Defendant's advertisement was also materially misleading and likely to mislead a reasonable consumer acting reasonably under the circumstances: Defendant advertised the Vehicle at the low price of $48,375 when the actual price Defendant charged on the RISC was $63,099.55, and advertised the Vehicle as new when it was a used demonstrator. Compl. ¶¶ 26, 28–29; Gagliardi Aff. ¶¶ 8–11 & Exs. A–D; *see Singh*, 2 A.D.3d at 704.

## C. Defendant's False Advertisement Resulted in Plaintiff's Injury.

For purposes of § 350, an "injured person" is "one who was misled or deceived by [the false] advertisement." *Cohen*, 2013 WL 9450421, at *5; *see Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000). Plaintiff was misled and deceived by Defendant's advertisement: she understood from the window sticker that the price was $48,375, Gagliardi Aff. ¶ 8; Compl. ¶ 30, yet was charged $63,099.55 under the terms of the RISC, Gagliardi Aff. ¶ 9 & Ex. B; Compl. ¶ 29. A reasonable consumer acting reasonably under the circumstances would likewise have been misled. Defendant's false advertisement therefore caused Plaintiff's actual injury and pecuniary loss, Compl. ¶¶ 20, 29–30; Gagliardi Aff. ¶¶ 9, 13, entitling her to actual damages and to the treble damages the Complaint seeks under General Business Law §§ 349 and 350.

## POINT IV
## PLAINTIFF'S COMPLAINT STATES A VALID COMMON-LAW FRAUD CLAIM

Under New York law, the elements of common-law fraud are "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). The admitted allegations, confirmed by Plaintiff's affidavit, establish each element. Defendant knowingly made false representations concerning the status and pricing of the Vehicle—representing it as new on the bill of sale and MV-50 while its own RISC identified it as a demonstrator. Compl. ¶ 31; Gagliardi Aff. ¶¶ 10–11 & Exs. B–D. Defendant intended for Plaintiff to rely on those representations. Compl. ¶ 32. Plaintiff

14

reasonably relied on them to her detriment: she went to the dealership to buy a new vehicle, was shown a new vehicle, and would not have purchased the Vehicle had she known it was not new. Compl. ¶¶ 19, 33; Gagliardi Aff. ¶¶ 2–5, 13. And Plaintiff sustained damages as a result. Compl. ¶¶ 20, 34; Gagliardi Aff. ¶ 9.

New York courts have granted relief on materially indistinguishable facts. In *D'Angelo v. Bob Hastings Oldsmobile, Inc.*, the Appellate Division upheld a fraud claim and granted equitable rescission to a consumer who discovered that the "new" truck he had purchased was in fact a demonstrator. 89 A.D.2d 785 (4th Dep't 1982), *aff'd*, 59 N.Y.2d 773 (1983). And in *Urquhart v. Philbor Motors, Inc.*, the Second Department reversed the dismissal of a car buyer's common-law fraud and fraudulent-inducement claims, holding that rescission of a sales contract for fraud does not require proof of pecuniary loss. 12 A.D.3d 419, 784 N.Y.S.2d 144 (2d Dep't 2004). Plaintiff, whose "new" vehicle was in fact a used demonstrator sold at an inflated and undisclosed price, has established her fraud claim no less than the plaintiffs in *D'Angelo* and *Urquhart*.

## POINT V
## PLAINTIFF IS ENTITLED TO RESCISSION AND RESTITUTION

Plaintiff sought to purchase a new vehicle—not a used demonstrator—and the Complaint demands rescission of the transaction. Compl. ¶¶ 5, 13 & Prayer for Relief ¶ E; Gagliardi Aff. ¶ 2. The Court should grant that relief. In both New York and federal courts, "an innocent misrepresentation of a material fact is sufficient to justify rescission." *Stern v. Satra Corp.*, 539 F.2d 1305, 1308 (2d Cir. 1976); *accord Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d

15

146, 153–54 (2d Cir. 1995). Defendant's misrepresentation that the Vehicle was new—when it was a used demonstrator that had already been driven at least 2,442 miles—went to the essence of the bargain and is more than sufficient to warrant rescission. Compl. ¶¶ 16–18; Gagliardi Aff. ¶¶ 10–11 & Exs. B, D.

Plaintiff, moreover, acted promptly to disaffirm the transaction. Upon discovering that she was purchasing a demonstrator, she immediately told Defendant she did not want the Vehicle, Gagliardi Aff. ¶¶ 6–7, and she thereafter returned to the dealership and asked Defendant to take the Vehicle back, which Defendant refused to do, Gagliardi Aff. ¶ 12. It was Defendant—not Plaintiff—that refused to undo the fraudulent bargain.

Rescission and damages may be pursued together. New York C.P.L.R. 3002(e) expressly permits a plaintiff to join a claim for rescission with a claim for damages in a single action without being deemed to have made an inconsistent election, and to obtain complete relief—including rescission, restitution, and damages—so long as there is no double recovery. Plaintiff accordingly requests that the Court rescind the transaction, order restitution restoring Plaintiff to the status quo ante, and award the damages, statutory damages, attorney's fees, and costs set out below and supported by the accompanying affidavit.

**POINT VI**
**PLAINTIFF IS ENTITLED TO THE RELIEF DEMANDED, IN THE AMOUNTS ESTABLISHED BY THE ACCOMPANYING AFFIDAVIT**

Having established Defendant's liability on each cause of action, Plaintiff is entitled to the relief the Complaint demands. Compl., Prayer for Relief ¶¶ A–H. Because a default does not admit the amount of damages, Plaintiff supports each

element of relief with the affidavit of Gina R. Gagliardi and its exhibits. *Greyhound*, 973 F.2d at 158; *Finkel*, 708 F. Supp. 2d at 283–84. Specifically, Plaintiff is entitled to:

a.      rescission of the transaction and restitution restoring Plaintiff to the status quo ante, Gagliardi Aff. ¶¶ 9, 12–13 & Ex. B;

b.      actual damages in the amount of $12,268.07—the overcharged difference between the $48,375 advertised price and the $60,643.07Plaintiff was charged—together with the related finance charges and taxes, Gagliardi Aff. ¶¶ 8–9 & Exs. A–B;

c.      statutory damages under the Truth in Lending Act, 15 U.S.C. § 1640(a);

d.      treble damages under New York General Business Law §§ 349(h) and 350;

e.      attorney's fees and costs under the Truth in Lending Act, 15 U.S.C. § 1640(a)(3), and General Business Law § 349(h), in an amount to be established by counsel's fee application; and

f.      pre- and post-judgment interest.

## CONCLUSION

For the foregoing reasons, Plaintiff Gina R. Gagliardi respectfully requests that the Court enter a default judgment against Defendant Port Jeff Chrysler Jeep Inc. on each cause of action; rescind the transaction and order restitution; award actual damages, statutory damages under the Truth in Lending Act, and treble damages under New York General Business Law §§ 349 and 350; award attorney's

17

fees, costs, and pre- and post-judgment interest; and grant such other and further

relief as the Court deems just and proper—all in the amounts set forth in the

accompanying affidavit of Gina R. Gagliardi and the proposed default judgment

submitted herewith.

Dated: July 16, 2026
       Long Island City, New York

**Kasell Law Firm**

By: /s/ *David M. Kasell*
David M. Kasell
*Attorney for Plaintiff Gina R. Gagliardi*
1038 Jackson Avenue, Suite #4
Long Island City, New York 11101
Office: (718) 404-6668
Email: david@kaselllawfirm.com